EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Acueductos y Alcantarillados de Puerto Rico<br><br>Apelada<br><br>v.<br><br>Rosa Cortés Flores y otros<br><br>Apelantes | Apelación<br><br>2024 TSPR 96<br><br>214 DPR ___ |

Número del Caso: AC-2023-0087


Fecha: 4 de septiembre de 2024


Tribunal de Apelaciones:

    Panel V


Representante legal de la parte apelante:

    Lcdo. Edgardo Delgado Bras


Representantes legales de la parte apelada:

    Lcdo. Enrique R. Adames Soto
    Lcdo. Ricardo Burgos Vargas



Materia: Ley de Expropiación Forzosa – El pago de intereses aplicable al determinar la justa compensación en casos de expropiación forzosa es uno capitalizado desde el momento de la ocupación material del bien expropiado.



Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Autoridad de Acueductos y Alcantarillados de Puerto Rico<br><br>    Apelada<br><br>        v.<br><br>Rosa Cortés Flores y otros<br><br>    Apelantes | | Apelación<br><br><br>AC-2023-0087 |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 4 de septiembre de 2024.

El recurso presentado requiere que examinemos nuestras expresiones en *Aut. Carreteras v. 8,554.741 m/c II*, 172 DPR 1050 (2008), y la posterior promulgación de la Ley 167-2015 (32 LPRA sec. 2908). Esto tiene el propósito de determinar si el pago de intereses de una propiedad ocupada por el Estado 25 años antes de la petición de expropiación forzosa, es a base de un interés simple o compuesto.

Reconociendo nuestra responsabilidad constitucional de determinar una justa compensación en casos de expropiación forzosa, concluimos que el pago de intereses aplicable es uno capitalizado desde el momento de la ocupación material. Esto es conforme con nuestras expresiones en *Aut. Carreteras v. 8,554.741 m/c II*, *supra*. Por lo tanto, la aplicación del pago de intereses simple de la Sec. 5B de la Ley de 12 de marzo de 1903, según enmendada, conocida como Ley de

Expropiación Forzosa, 32 LPRA sec. 2901 *et seq.*, no limita la determinación del tribunal, pues no cumple adecuadamente con el requisito constitucional de justa compensación de la parte con interés.

I

El 8 de marzo de 2013, la Autoridad de Acueductos y Alcantarillados de Puerto Rico (AAA) presentó una Petición sobre Expropiación Forzosa para adquirir una parcela en pleno dominio y un predio en servidumbre (propiedad) en el barrio Malezas de Mayagüez. Esto tenía el fin de construir el proyecto "Tanque Malezas Mayagüez". La AAA identificó a la Sra. Rosa Julia Cortés Flores (apelante) como la única parte con interés propietario sobre la propiedad y consignó en la Secretaría del Tribunal la suma de $43,967.00 en concepto de justa compensación.

La compensación fue desglosada de la manera siguiente:[1]

| Propietaria | | Compensación |
|---|---|---|
| ROSA CORTÉS FLORES, t/c/p | Water Tank | $13,581.00 |
| Rosa Luisa Cortés Flores | Serv. de Paso | 10,017.00 |
| | Remanente | 20,369.00 |
| | Total | $43,967.00 |

La Resolución de investidura fue emitida el 18 de marzo de 2013. Así las cosas, el 26 de junio de 2013, la señora Cortés Flores compareció y solicitó el retiro de los fondos consignados. En sus comparecencias, la señora Cortés Flores aceptó la valoración de la AAA, pero cuestionó la fecha de la incautación por lo que solicitó el pago de rentas desde el 1988. El 2 de octubre de 2014, el foro primario permitió

---

[1] Apéndice, pág. 51.

levantar el dinero consignado por lo que, luego de deducidas las contribuciones adeudadas, la cantidad de $41,793.90 fue transferida a la cuenta de la señora Cortés Flores el 22 de octubre de 2014.[2]

Así las cosas, las partes estipularon que la ocupación había ocurrido el 1 junio de 1988. Por ello, la AAA solicitó enmendar el Informe a los efectos de presentar una nueva tasación a esta fecha. Mediante Informe presentado el 6 de mayo de 2015, la AAA informó que el valor de la propiedad que correspondía a la nueva fecha de incautación era por la cantidad total de $28,349.91. Según explicó la AAA, para el cómputo utilizó la tasa aplicable a sentencias judiciales preparada por la Oficina del Comisionado de Instituciones Financieras y a base de un interés compuesto.[3] El desglose de esta cantidad fue el siguiente:

| PERSONAS O ENTIDADES CON INTERÉS | | COMPENSACIÓN |
|---|---|---|
| ROSA CORTÉS FLORES, t/c/p | Water Tank | $ 3,276.00 |
| Rosa Luisa Cortés Flores | Serv. de Paso | $ 2,417.00 |
| | Remanente | $ 4,914.00 |
| | Intereses | $17,742.91 |
| | | $28,349.91 |

Esta enmienda fue autorizada. Por lo tanto, ante la diferencia de $15,617.09 entre la cuantía original y la enmienda autorizada, la AAA solicitó a la señora Cortés Flores la consignación del exceso de la compensación.

Mientras las partes discutían sobre la nueva tasación de la propiedad, el 8 de octubre de 2015 se promulgó la Ley 167-2015 (32 LPRA sec. 2908), que dispone que en los

_____

[2] Apéndice, págs. 103 y 243.
[3] Apéndice, pág. 151.

procedimientos de expropiación forzosa "los intereses se computarán de forma simple y no compuesta". Con este referente y luego de múltiples trámites procesales, la vista se celebró el 21 de septiembre de 2021. En ella, el Sr. Esteban Núñez Camacho, tasador de la AAA y único testigo que declaró en la vista, hizo el cómputo de intereses a base de un interés simple desde la fecha de la ocupación hasta la presentación de la Petición de Expropiación para un total de $10,610.00. Por lo tanto, la AAA requirió la devolución de $22,785.25 que representaba el exceso entre la cantidad consignada y la justa compensación estimada.

El 27 de marzo de 2023, el foro primario emitió una Sentencia en la que determinó que la valoración enmendada era la correcta debido a que conforme a la jurisprudencia vigente, la fecha de la ocupación material de la propiedad es la determinante. Además, sostuvo el pago de intereses compuestos ya que la expropiación ocurrió antes de la vigencia de la Ley 167-2015, *supra*, y debido a la dilación sustancial entre la incautación y la consignación del justo valor del bien expropiado. Por ello, remitió a la AAA a computar los intereses conforme a *Aut. Carreteras v. 8,554.741 m/c II*, *supra*, y de existir controversia entre las partes en cuanto al cómputo, advirtió que serían referidos a la Unidad de Cuentas para la recomendación correspondiente.

Oportunamente, la AAA presentó un recurso de apelación.[4] En esencia, señaló como error que el foro de instancia no

---

[4] Además, señaló como error que el foro de instancia no ordenara a la Sra. Rosa Julia Cortés Flores a reintegrar a la AAA la cantidad en exceso al valor de la justa compensación según el estimado presentado.

aplicó los intereses simples conforme a la Ley 167-2015, *supra*. Sobre este particular reconoció que de nuestras expresiones en *Aut. Carreteras v. 8,554.741 m/c II*, supra, se puede "inferir que el cómputo de intereses debe ser compuesto".[5] No obstante, sostuvo que "el TPI evadió su obligación de aplicar lo dispuesto en el Artículo 5(b) de la Ley General de Expropiaciones[…]. Este artículo claramente, dispone que los intereses a pagarse con motivo de una expropiación si alguno, se determinarán **a partir de que se dicte la sentencia y se computarán de forma simple**" tanto para los casos de expropiación directa como de expropiación a la inversa.[6] Sostuvo también que no existe violación a la Doctrina de Separación de Poderes ya que nuestras expresiones "en Rexco demuestran, que compete a la legislatura determinar la forma y manera en que se computarán los intereses con motivo de una expropiación" y tampoco a la norma general de irretroactividad de las leyes puesto que "cualquier enmienda legislativa que se efectúe respecto al cómputo de intereses, tiene que estimarse como una modificación estrictamente procesal que puede tener efecto retroactivo sobre casos inconclusos, sin la posibilidad de quebrantar derechos adquiridos".[7]

Con el beneficio de la comparecencia de ambas partes, el foro apelativo intermedio emitió una Sentencia mediante la que modificó el dictamen del foro recurrido y concluyó

---

[5] Apéndice, pág. 32.

[6] Apéndice, págs. 21 y 32.

[7] Id. págs. 36 y 38.

que los intereses deben computarse de manera simple, pues al momento de la emisión de la Sentencia ya regían las disposiciones de la Ley 167-2015, *supra*, que prohíben expresamente imponer el cómputo de los intereses de forma compuesta. Razonó que el procedimiento de expropiación forzosa es de naturaleza civil y se debe llevar a cabo en conformidad con la Ley de Expropiación Forzosa, *supra*, y la Regla 58 de Procedimiento Civil, 32 LPRA Ap. V.

Inconforme, la señora Cortés Flores recurre ante nos y señala como errores que el foro apelativo intermedio fundamentara en la Ley Núm. 167-2015, *supra*, el cómputo de los intereses a base de un interés simple. Sostiene que el foro recurrido obvió la jurisprudencia que establece que estos deben ser capitalizados, que la ocupación ocurrió antes de su aprobación, y su planteamiento sobre la inconstitucionalidad de la ley.

El 8 de diciembre de 2023, expedimos el auto. Contando con la comparecencia de ambas partes, estamos en posición de resolver.

## II

### A.

Nuestra Constitución reconoce el derecho fundamental al disfrute de la propiedad. Art. II, Sec. 7 Const. PR, LPRA, Tomo I. No obstante, este derecho no es absoluto. Cede ante el poder de dominio eminente del Estado en beneficio del bienestar general. Este, a su vez, está sujeto al pago de una justa compensación y a que se realice de acuerdo con las leyes que regulan la expropiación forzosa. Art. II, Sec. 9,

Const. PR, LPRA, Tomo 1.  Véase además, *SLG Ortiz-Mateo v. ELA,* 211 DPR 772 (2023); *ELA v. El Ojo de Agua Development*, 205 DPR 502 (2020).

El procedimiento a seguir está establecido en la Ley de Expropiación Forzosa, *supra*, y las Reglas 58 y 60 de Procedimiento Civil, *supra*. En esencia, requiere que una entidad gubernamental inicie formalmente el procedimiento judicial de expropiación forzosa y consigne el pago de la justa compensación estimada. De cumplir con los requisitos, el título de dominio le queda investido. Transcurrido el procedimiento, el tribunal adjudica la compensación final.

No obstante, en casos excepcionales el Estado puede ocupar una propiedad previo al inicio del procedimiento judicial y la consignación correspondiente.[8] Para estas situaciones existe a beneficio de la parte afectada la acción de expropiación a la inversa.  A estos casos los tribunales también les hemos aplicado "las mismas normas y principios que rigen la acción de expropiación instada por el Estado".[9] *SLG Ortiz-Mateo v. ELA, supra*, pág. 793; *Amador Roberts et als. v. ELA*, 191 DPR 268 (2014); *Culebra Enterprises Corp. v. ELA*, 143 DPR 935, 946-947 esc. 14 (1997).

En cuanto a los demás aspectos de una expropiación, hemos señalado que la controversia sobre qué propiedad es

---

[8] *SLG Ortiz-Mateo v. ELA,* 211 DPR 772, 787 2023)("[E]l Estado está obligado a compensar a un propietario en los escenarios siguientes: (1) cuando se ejerce el poder de dominio eminente al presentar un recurso de expropiación; (2) cuando ocurre una incautación de hecho mediante ocupación física, o (3) cuando se reglamenta el uso de una propiedad".)

[9] *Amador Roberts et als. v. ELA*, 191 DPR 268, 282 (2014)("[P]resentada una acción de expropiación a la inversa, si el Estado presenta una de expropiación forzosa directa sobre el terreno en controversia y consigna el pago de la justa compensación, la de expropiación a la inversa queda fundida en el pleito de expropiavión forzosa instado por el Estado".)

necesaria para propósitos públicos es una de carácter político y legislativo. **Sin embargo, hemos sido enfáticos en que la determinación de lo que constituye una justa compensación es un ejercicio judicial y no legislativo.** *SLG Ortiz-Mateo v. ELA, supra*; *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586 (2021); *Aut. Carreteras v. 8,554.741 m/c II*, *supra*; *E.L.A. v. Rexco Industries, Inc.*, 137 DPR 683 (1994).

La justa compensación a la que tiene derecho la parte con interés en el bien expropiado es aquella que lo coloca en una situación económica equivalente a la que estaría de no haberse expropiado la propiedad, es decir, **aquella cantidad que representa el valor en el mercado de la propiedad al tiempo de la incautación.** *Adm. Terrenos v. Ponce Bayland, supra*; *Amador Roberts et als. v. ELA*, *supra*.

Sin embargo, varias fechas pueden tener un efecto en esta compensación. Estas son: (1) el momento de la incautación, (2) la fecha del depósito en los tribunales de la compensación estimada y (3) la del pago total de la compensación finalmente adjudicada. En vista de que estas fechas pueden distar las unas de las otras, **además del valor del bien, hemos reconocido que el pago de intereses por esta demora es parte integral del mandato constitucional de justa compensación.**[10] *ELA v. El Ojo de Agua Development*, *supra*; *E.L.A. v. Rexco Industries, Inc.*, *supra*. De igual forma, "la Ley de Expropiación ordena el pago de intereses cuando existe

---

[10] Desde la Ley Núm. 2 de 1 de abril de 1941 se proveyó para el pago de interés por expropiación. *ELA v. El Ojo de Agua Development*, 205 DPR 502 (2020); *E.L.A. v. Rexco Industries, Inc.*, 137 DPR 683 (1994).

una diferencia entre la suma fijada por la parte que solicita la expropiación y la cantidad que determine el Tribunal como justa compensación". *Aut. Carreteras v. 8,554.741 m/c II*, *supra*, pág 1061. Específicamente, los intereses se computan desde la fecha en que ocurrió la expropiación hasta la fecha en que se pague totalmente la compensación. Así, por ejemplo, "(e)n las expropiaciones de hecho o de ocupación física de la propiedad, previo a la consignación de la justa compensación, la fecha de la expropiación será la de la ocupación, y no la fecha en que se radica la demanda". C. Torres Torres, *La expropiación forzosa de Puerto Rico: ley, jurisprudencia, estudio y guía práctica*, San Juan, [ed. Autor], 2002, pág. 179. Véase, *SLG Ortiz-Mateo v. ELA,* supra, pág. 790; Culebra *Enterprise Corp. v. ELA*, *supra*. Por lo tanto, el valor se determina a la fecha de la ocupación física y los intereses se computarán desde entonces hasta que se pague la totalidad de la compensación.

En cuanto al tipo de interés, en *E.L.A. v. Rexco Industries, Inc.*, *supra*, descartamos la aplicación de un interés fijo estatutario que no tome en consideración las variaciones en el mercado y, por ello, declaramos que hasta que la Asamblea Legislativa enmendara la ley de acuerdo con nuestros pronunciamientos, los tribunales utilizarán para este ejercicio las tasas de interés que fije por Reglamento la Oficina del Comisionado de Instituciones Financieras (OCIF).[11] De esta forma, reconocimos la interrelación entre

---

[11] El Reglamento 78-1 de la Oficina del Comisionado de Instituciones Financieras dispone de una tasa equivalente al rédito de los "US Treasury

las ramas en cuanto al poder de expropiación forzosa. También, en la medida de lo posible, recurrimos a una interpretación razonable de la ley antes de declarar su inconsitucionalidad, pero sin negar la función última de los tribunales de proteger la justa compensación de la persona expropiada.

De igual forma, hemos reconocido que del periodo comprendido entre la fecha de expropiación y la del pago total del bien expropiado exceder un semestre, el foro de instancia tiene que considerar las variaciones en las tasas de interés durante los distintos semestres, según determinados por la OCIF. *Aut. Carreteras v. 8,554.741 m/c II*, *supra*; *Aut. Carreteras v. 8,554.741 m/c I*, 172 DPR 278 (2007). Ambos aspectos, tanto el que se utilicen las tasas de interés determinadas por la OCIF como que se consideren las variaciones entre estas tasas, fueron acogidos por la Asamblea Legislativa en las enmiendas posteriores a la Ley de Expropiación Forzosa.

Por otro lado, en *Aut. Carreteras v. 8,554.741 m/c II*, *supra*, concluimos que ante el esquema desarrollado -que tiene como objetivo que las tasas de intereses aplicables a los casos de expropiación forzosa reflejen las fluctuaciones en el mercado de valores y se cumpla con el mandato constitucional de satisfacer una justa compensación- se tienen que **computar progresivamente** sobre la base de distintas tasas de interés aplicables a los semestres

_____

Bills" con vencimiento a seis (6) meses redondeados al 12 punto más cercano.

comprendidos entre la incautación y el pago total. Por ello, adoptamos la capitalización del interés y aclaramos que al valor resultante, el tribunal debe añadirle:

> [L]a tasa de interés anual prevaleciente en el correspondiente semestre, según se establece en el documento que emite OCIF (Reglamento 78-1), por los correspondientes meses hasta el final del semestre. Al valor que resulte se le aplica la tasa de interés anual prevaleciente en el siguiente semestre, según se establece en el documento que emite OCIF (Reglamento 78-1), por los correspondientes meses del semestre. Este proceso se repite hasta la consignación final del valor de la propiedad expropiada que así resulte. Id., págs. 1064-65. Véanse además, E. Rivera Ramos, *Derecho Constitucional*, 78 Rev. Jur. UPR 625 (2008); C. Hernández Colón, *La validez de la incautación rápida en el tiempo de la crisis*, 57 Rev. Der. Pur. 273 (2018).

No obstante, con posterioridad a nuestros pronunciamientos se promulgó la Ley Núm. 167-2015, supra, la cual enmienda la Sec. 5B de la Ley de Expropiación Forzosa, supra. Esta sección dispone en lo pertinente que:

> En los casos donde el periodo entre la incautación y el pago total del Estado exceda un semestre, el tribunal deberá considerar las variaciones en las tasas de interés aplicables a los semestres comprendidos entre la fecha de la expropiación hasta la fecha del pago de la justa compensación, según determinados por la Oficina del Comisionado de Instituciones Financieras (OCIF); Disponiéndose, que los intereses se computarán de forma simple y no compuesta. 32 LPRA sec. 2908.

En la Exposición de Motivos de la Ley Núm. 167-2015, *supra*, la Asamblea Legislativa expresó el razonamiento para esta enmienda. Sostuvo que "[c]omo norma general, en los casos que involucra el pago de una cantidad líquida, se paga el interés simple", que "el pago de intereses es adicional

a la suma ya establecida como justa compensación, y lo que se persigue con el pago de intereses es el compensar por la dilación en pagar la suma previamente establecida". Añade que "[e]sta medida conllevará un ahorro sustancial en el pago de estas sentencias, donde no se justifica el pago de un interés contrario a la norma general establecida para los casos ordinarios de pago de sentencia". Id.

Sin embargo, los casos de expropiación forzosa no son "casos ordinarios". Como hemos expresado repetidamente, **el pago de intereses es parte integral de la justa compensación, que a su vez, surge de un mandato constitucional y se determina por los tribunales al momento de la Sentencia.**

Ciertamente, en las distintas jurisdicciones hay amplia discusión y análisis sobre cuál es el tipo de interés aplicable para una justa compensación y sobre si su cómputo debe ser simple o compuesto. Esto tiene el objetivo de lograr cierta uniformidad sin sacrificar la justa compensación. Como es de esperarse, todas las propuestas, esquemas o metodologías tienen elementos a favor y otros en contra. Sin embargo, nada debe desvirtuar que la determinación final sobre si la compensación es suficiente y razonable recae en la discreción de los tribunales; que el norte de nuestra determinación siempre debe ser cumplir con el mandato constitucional de que la persona afectada quede en la misma posición que hubiese estado del pago haber coincidido con la expropiación, y que **el pago de intereses es parte integral de la justa compensación.** Por ello, los tribunales no debemos cumplir ciegamente con las

disposiciones estatutarias que afecten la compensación, pues es un asunto de derecho sustantivo y constitucional. Por lo tanto, cualquier expresión legislativa al respecto queda supeditada a la determinación de los tribunales de que se provea una justa compensación en el caso ante su consideración. De concluirse que el interés estatutario es insuficiente constitucionalmente para la persona afectada por la expropiación, debemos modificarlo.

Así, en nuestra jurisdicción hemos adoptado el cómputo que expresáramos anteriormente y que utiliza como instrumento financiero los "US Treasury Bills" similar al *Declaration of Taking Act*, 40 USCA 3114, estatuto federal que nos sirvió de modelo. *Aut. Carreteras v. 8,554.741 m/c I*, supra, pág. 301. Sin embargo, el *Declaration of Takings Act* fue expresamente diseñado considerando las expropiaciones directas y no situaciones en las que ha transcurrido un tiempo significativo entre la incautación y el pago de la compensación.[12] *United States v. Miller,* 317 US 369 (1943). Por ello, con el transcurso del tiempo, ese estatuto federal también ha requerido la aplicación de un interés compuesto en aquellos casos en los que el pago de la compensación se ha demorado más de un año.[13] Por lo tanto,

---

[12] Por ello, el Tribunal de Reclamaciones de Estados Unidos (*United States Court of Federal Claims*) ha examinado otras fórmulas para calcular la justa compensación debida en casos de expropiaciones a la inversa. Véase, *Sears v. United States*, 124 Fed. Cl. 730, 734 n. 3 (2016).

[13] "**(a) Calculation.**--The district court shall calculate interest required to be paid under this subchapter as follows:
**(1) Period of not more than one year**.--Where the period for which interest is owed is not more than one year, interest shall be calculated from the date of taking at an annual rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of taking.

mientras en nuestra jurisdicción no se adopte otro mecanismo o tipo de interés que cumpla con los principios y objetivos antes esbozados -particularmente en casos en los que la tardanza entre la ocupación física de la propiedad y la compensación del dueño es mayor de un año- debemos continuar aplicando un interés compuesto al momento de emitir la sentencia correspondiente. A esto nos referíamos cuando en *E.L.A. v. Rexco Industries, Inc.*, *supra*, declaramos las tasas de interés aplicables hasta que la Asamblea Legislativa enmendara la ley de acuerdo con nuestros pronunciamientos y los principios esbozados.

## III

En el caso de autos, las partes estipularon que la fecha de incautación se remonta a junio de 1988. En vista de lo anterior, ante nos no hay controversia en cuanto a que la justa compensación debe representar el valor de la propiedad al tiempo de la incautación. Tampoco se ha presentado prueba que refute la valoración de la propiedad por el Estado al momento de ser expropiada en junio de 1988.[14] Aclarado lo anterior, queda ante nos la controversia de si los intereses

---

**(2) Period of more than one year.**--Where the period for which interest is owed is more than one year, interest for the first year shall be calculated in accordance with paragraph (1) and interest for each additional year shall be calculated on the amount by which the award of compensation is more than the deposit referred to in section 3114 of this title, plus accrued interest, at an annual rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the beginning of each additional year.
**(b) Distribution of notice of rates.**--The Director of the Administrative Office of the United States Courts shall distribute to all federal courts notice of the rates described in paragraphs (1) and (2) of subsection (a)". 40 USCA sec. 3116.

[14] *Mun. de Guaynabo v. Adquisición M2*, 180 DPR 206 (2010); *ACT v. 780.6141m2*, 165 DPR 121 (2005).

a computarse deben ser simples o compuestos. Por un lado, la parte apelante sostiene que deben ser capitalizados conforme a *Aut. Carreteras v. 8,554.741 m/c II*, *supra*, mientras que la AAA sostiene deben ser simples según la Sec. 5B de la Ley de Expropiación Forzosa, *supra*.

Cabe señalar que, en el caso de autos se dio una situación anómala. Específicamente, la incautación fue 25 años antes de que la AAA presentara la Demanda de Expropiación y de que consignara una justa compensación estimada al año de la presentación. Pasados dos años, la AAA presentó una enmienda a la valoración para reconocer la verdadera fecha de incautación y utilizó para el estimado intereses compuestos. En aquel momento la discusión entre las partes se dirigió hacia la controversia sobre cuál tasación debía prevalecer, pero en el interín se aprobó la Ley Núm. 167-2015, *supra*. Desde entonces la AAA sostiene que corresponde el cómputo de intereses simples.

Como expresáramos, los tribunales no podemos claudicar nuestra responsabilidad constitucional de determinar una justa compensación en casos de expropiación forzosa. Asimismo, la determinación de lo que constituye justa compensación es tarea eminentemente judicial y esta incluye el correspondiente pago de intereses. Por lo tanto, aunque en el proceso de ejecución forzosa tienen participación las tres ramas de gobierno, cualquier disposición estatutaria al respecto está subordinada a que se cumpla, entre otros elementos, con el requisito constitucional de ofrecer una justa compensación al dueño por la demora del Estado. A su

vez, la justa compensación incluye la valoración de la propiedad y el pago de intereses. Los tribunales debemos velar por ello, especialmente al momento de la Sentencia cuando queda finalmente determinada la justa compensación.

En el caso de autos el Estado demoró 25 años en iniciar el procedimiento de expropiación forzosa y compensar a la señora Cortes Flores por haber incautado su propiedad. Ante una tardanza tan significativa, concluimos que una justa compensación utilizando la metodología vigente en nuestra jurisdicción requiere el pago de intereses compuestos. Solo de esta forma podemos compensar a la señora Cortés Flores por tal dilación.

Por lo tanto, concluimos que la restricción del pago de intereses a uno simple de la Sec. 5B de la Ley de Expropiación Forzosa, *supra*, no cumple adecuadamente con el requerimiento constitucional de justa compensación en este caso.

**IV**

Por los fundamentos expresados, se revoca la sentencia recurrida que determinó que los intereses debían computarse de manera simple, se reinstala el dictamen del tribunal de instancia, y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Autoridad de Acueductos y Alcantarillados de Puerto Rico<br><br>    Apelada<br><br>        v.<br><br>Rosa Cortés Flores y otros<br><br>    Apelantes | AC-2023-0087 | Apelación |

SENTENCIA

En San Juan, Puerto Rico, a 4 de septiembre de 2024.

    Por los fundamentos expresados en la Opinión que antecede, se revoca la sentencia recurrida que determinó que los intereses debían computarse de manera simple, se reinstala el dictamen del tribunal de instancia, y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

    Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez concurren sin expresión escrita.


                    Javier O. Sepúlveda Rodríguez
                    Secretario del Tribunal Supremo